IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHARLES WILLIAMSON                                              PETITIONER

VS.                      CASE NO. 5:14CV00240 JLH/HDY

RAY HOBBS, Director of the
Arkansas Department of Correction                               RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

Charles Williamson seeks habeas corpus relief pursuant to 28 U.S.C. §2254. Mr. Williamson is in the custody of the Arkansas Department of Corrections (ADC) as a result of his 2012 conviction following a jury trial in Garland County Circuit Court. He was convicted of first degree murder, with an enhancement for use of a firearm, and received sentences of life imprisonment and fifteen years, respectively. On direct appeal, Mr. Williamson argued that the evidence was insufficient to support his conviction for first degree murder, and that the trial court erred in admitting his confession into evidence. *Williamson v. State*, 2013 Ark. 347. Early in 2014, Mr. Williamson filed a Rule 37 petition which he conceded was not timely. The trial court denied his motion to consider the Rule 37 petition despite its tardiness. No appeal was taken of this ruling.

He now advances four claims for relief;

1. Ineffective assistance of counsel for failure to investigate his mental and emotional status, including his mental capacity and competency to stand trial;
2. His confession was coerced;
3. Ineffective assistance of counsel for failure to preserve a claim that his confession was unlawful because it was obtained through a false promise; and
4. Ineffective assistance of counsel for failure to conduct and independent investigation of the events surrounding the murder.

The respondent contends that ground two was reasonably adjudicated in state court and is,

therefore, without merit in this proceeding. The respondent contends that grounds one, three, and four should be dismissed as procedurally barred, since these claims were not adequately raised in state court. By previous Court Order, Mr. Williamson was advised of his opportunity to counter the procedural bar argument, and he has submitted a responsive pleading.

**Procedural Default:** The respondent contends that claims one, three, and four are not properly before this Court due to the petitioner's failure to adequately raise the claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. Specifically, the respondent contends that Mr. Williamson failed to pursue a timely Rule 37 petition in state court, depriving the state courts the opportunity to consider the three challenges to efficacy of counsel.

In considering this issue, we are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). Here, we conclude that judicial economy will be best served by foregoing the procedural default analysis and considering the merits of the claims advanced by Mr. Williamson.

**Ground Two – Admission of the Confession:** The petitioner sought to exclude the confession, filing a motion to suppress the statement prior to trial. A hearing was conducted. The petitioner also raised this claim on direct appeal, and the Arkansas Supreme Court summarized the facts and addressed the issue as follows:

> Williamson was charged with first-degree murder in connection with the death of his girlfriend, Jessica Noles, on April 23, 2010, in Hot Springs, Arkansas. According to Williamson, who confessed to police and also testified at the jury trial, he and Noles were in an argument, and Noles threatened to leave Williamson

and take the couple's two-week-old son with her. Williamson went and retrieved his .38 Special revolver, which he had purchased the previous month. Noles was sitting in the kitchen, holding their son, and Williamson testified that he pointed the gun at Noles's forehead, cocked the hammer back, and pulled the trigger, killing her. He testified that he "blacked out," that he was not in his right mind at the time, and that he could not control his actions. Williamson stated that he caught the baby as Noles slumped over in the chair. He then threw the gun in the trash can and called his grandmother, who called 911.

   Detective Michael Lyndon with the Hot Springs Police Department testified that he arrived on the scene at 2:45 p.m. When he entered the apartment, Lyndon stated that he saw Noles's body slumped over in the chair with an obvious gunshot wound to the head, from which blood was dripping into either a bucket or a trash can. Williamson was holding the baby and talking on the phone, and Lyndon heard Williamson say to the person on the phone that "he didn't mean to hurt her." Williamson's grandmother and his aunt were also present in the apartment. Lyndon asked about the location of the weapon, and Williamson advised police that it was in the trash can. The gun was retrieved and contained four live cartridges. One spent .38–caliber shell casing was also recovered.

   Williamson was arrested and taken to the police station for questioning, and Sergeant Jason Brasfield conducted the interview. Brasfield testified that he first advised Williamson of his *Miranda* rights. According to Brasfield, Williamson told him that he had completed the twelfth grade through a special-education program and that he was not currently under the influence of any alcohol or drugs. Brasfield testified that he then showed Williamson the rights form and read each right to him, while allowing Williamson to read along. Brasfield asked Williamson if he understood each right, which he indicated that he did by placing his initials beside each one. Brasfield also read aloud the waiver-and-consent section of the form, and both Williamson and Brasfield signed it. Brasfield testified that Williamson did not have any questions about his rights and that he did not appear to have any trouble understanding the form. After Williamson had waived his rights, he gave a statement to Brasfield in which he admitted shooting Noles during their argument. He claimed that he suffered from obsessive-compulsive disorder (OCD) and that this triggered his bipolar condition, causing him to become angry and to shoot Noles after she threatened to leave him. Williamson indicated that he and Noles had been arguing all week because Noles's mother had been telling her that he was "no good" and that she should leave him. After Williamson finished his statement, Brasfield went and typed it up, then brought it to him to review and sign. Brasfield testified that he read the statement to Williamson and allowed him to read along. Williamson did not indicate that there were any changes or corrections that needed to be made to the statement. Brasfield brought another officer along to witness the statement being read to Williamson, and both officers, as well as Williamson, signed the statement.

   Prior to trial, Williamson filed a motion to suppress his statement to police, arguing that he was not properly advised of his *Miranda* rights and that he lacked the mental capacity to consent to a waiver of his rights. After a hearing, the circuit court denied the motion, finding that Williamson had been adequately apprised of his *Miranda* rights, that he had waived those rights, and that he had voluntarily

4

given his statement to police.

In addition to Williamson's confession, the State presented evidence that Noles was killed by a single bullet fired from Williamson's .38 Special at a distance of less than one inch. The firearm and tool-mark examiner testified that the gun was a double-action/single-action revolver, which could be fired either by first cocking the hammer back and then pulling the trigger, which requires relatively little trigger pressure, or by not cocking the hammer but by exerting significantly more pressure on the trigger.

At the conclusion of the evidence, the jury was given instructions on the charged offense of first-degree murder, the lesser-included offense of second-degree murder, and the firearm enhancement. The jury convicted Williamson of first-degree murder, as well as the firearm enhancement, and sentenced him to life in prison, plus fifteen years. Williamson filed a timely notice of appeal from the judgment and commitment order entered on July 19, 2012. . . .

In his second point on appeal, Williamson argues that the circuit court clearly erred by denying his motion to suppress his statement to police. This court reviews a trial court's decision denying a defendant's motion to suppress a confession by making an independent determination based on the totality of the circumstances, and the ruling will be reversed only if it is clearly against the preponderance of the evidence. *Osburn v. State,* 2009 Ark. 390, 326 S.W.3d 771. Conflicts in testimony at a suppression hearing about the circumstances surrounding a defendant's in-custody statement are for the trial judge to resolve. *Id.*

Custodial statements are presumed to be involuntary, and the burden is on the State to prove that the statement was given voluntarily and was knowingly and intelligently made. *Id.* In determining whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, we look to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* In making this determination, we consider the following factors: age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of detention; the repeated or prolonged nature of the questioning; the use of physical or mental punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.*

Williamson argues that his statement was not given voluntarily, knowingly, and intelligently because he was only twenty-two years old, he had completed twelfth grade in a special-education program, he had difficulty reading, and he had a learning disability. He further asserts that he was taken directly to the police station from the crime scene without the opportunity to receive advice from anyone other than the police about his constitutional rights. Williamson admits that there was no prolonged period of questioning in this case and that there was no use of mental or physical punishment.

Despite Williamson's assertions that his age, education, intelligence, and vulnerability prevented his statement from being voluntary, Sergeant Brasfield testified at the suppression hearing that he asked Williamson if he could read, write, and understand English. He also confirmed that Williamson had completed

high school. Brasfield testified that he then read each line of the rights form to Williamson, while allowing him to read along at the same time, and that Williamson did not ask any questions about his constitutional rights. Brasfield stated that Williamson did not appear to have any trouble understanding the form and that he initialed each constitutional right as it was read to him to indicate that he understood each one. Brasfield then read the waiver and consent provision at the bottom of the form to Williamson, who signed it and agreed to give a statement. After Williamson gave his statement, Brasfield typed it up and then read it to Williamson, ensuring that he did not wish to make any corrections or changes. Another officer who witnessed Brasfield read the statement to Williamson also testified that Williamson adopted it and that he did not appear to have any trouble comprehending the situation.

Although Williamson testified that he did not remember Brasfield reading the rights form to him, that he could not really read or write, and that he told Brasfield that he had difficulty reading, conflicts in testimony at the suppression hearing are for the circuit court to determine. *Osburn, supra.* Furthermore, even though Williamson professed at the hearing to not understand the right to remain silent or the role of his counsel, he admitted on cross-examination that he had undergone two mental examinations in which he had correctly identified the parties in a court proceeding. Given these circumstances, the circuit court did not clearly err in finding that Williamson was adequately apprised of his constitutional rights and that he voluntarily waived those rights by giving a statement.

Williamson also argues that his statement was involuntary because it was induced by a false promise, due to his testimony at the suppression hearing that Sergeant Brasfield promised him that he could go home if he told the police what had happened. We have held that if a police official makes a false promise that misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly, and intelligently made. *Conner v. State,* 334 Ark. 457, 982 S.W.2d 655 (1998).

The State responds that Williamson's argument regarding the alleged false promise is not preserved for appellate review because Williamson did not raise it to the circuit court. We agree. The only issues raised in Williamson's motion to suppress were whether he was properly advised of his *Miranda* rights and whether he lacked the mental capacity to consent to a waiver of his rights. Williamson never made a false-promise argument either in his motion to suppress or at the suppression hearing. Accordingly, this particular argument is not preserved for our review. *See, e.g., Tryon v. State,* 371 Ark. 25, 263 S.W.3d 475 (2007) (holding that an argument not raised to the circuit court in a motion to suppress is not preserved for appeal, even if it is constitutional in nature). We therefore affirm the circuit court's denial of Williamson's motion to suppress.

*Williamson v. State*, 2013 Ark. 347, 6-9.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Here, the petitioner does not establish that the Arkansas decision regarding his statement was contrary to or an unreasonable application of federal law. Nor does he demonstrate that the state courts' decision was based on an unreasonable determination of the facts in light of the evidence adduced in state court. The testimony offered in the pre-trial hearing on the motion to suppress was that the police officer taking the statement, Sgt. Brasfield, gave the *Miranda* warnings, inquired as to Williamson's understanding of the warnings, read each line of the warnings individually, had Williamson initial each line, read the statement to Williamson, and offered to amend the statement if needed. (Tr. 236-243). Brasfield stated no promises were made to Mr. Williamson to induce a statement. (Tr. 243). Similarly, Detective Freeman witnessed Brasfield reading the statement to Williamson, and testified that no threats or coercion occurred. (Tr. 258). The Arkansas courts found the statement was given voluntarily and intelligently. The only argument to be made on behalf of Williamson is that he testified that he was told if he gave a statement, he would be allowed to go home. (Tr. 271). This, however, was a matter of credibility for the trial court. The denial of the motion to suppress is clear evidence

that the trial court and, later, the Arkansas Supreme Court, found Williamson was not credible on this issue. We find that the Arkansas courts applied the appropriate federal law, and we further find ample evidence supports the state courts' ruling in this regard. There is no merit to the first claim of Mr. Williamson.

**Ineffective Assistance of Counsel:** The respondent urges that grounds one, three, and four, all of which are allegations of ineffective assistance of counsel, should be dismissed as procedurally barred. However, we will examine these claims, noting that the recent cases of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), have changed the landscape of procedural default analysis.

In order to prove ineffective assistance of counsel, petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

Here, Mr. Williamson contends his attorney failed to investigate his mental and emotional status, including his mental capacity and competency to stand trial, failed to preserve a claim that his confession was unlawful because it was obtained through a false promise, and failed to conduct an independent investigation of the events surrounding the murder. We have carefully

reviewed the transcript, which includes the trial and pre-trial proceedings. We do not find factual support for the assertion that petitioner's attorney failed to investigate his mental and emotional status, as Mr. Williamson was sent for a mental evaluation at the request of his attorney, and in addition received a second private mental evaluation prior to trial. These evaluations, by Drs. Deyoub and Moneypenny, did not support his claim of mental disease or defect. In any event, even if we assume the petitioner could satisfy the first prong of the *Strickland* analysis by showing his attorney's behavior was unreasonable, the petitioner falls far short of proving the second prong was satisfied, as he does not show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. The evidence against Mr. Williamson was overwhelming[1]. There was no hint that the death of Ms. Noles was caused by anyone other than the petitioner. This left Mr. Williamson's attorney with few options. The trial transcript reflects that Mr. Williamson's attorney attempted to persuade the jury to convict his client of a lesser charge than first degree murder, but there was not a reasonable chance of any lawyer, regardless of ability or strategy, of obtaining an acquittal under the circumstances. We find that even generously presuming some error by Williamson's attorney, there is no merit to any of his claims of ineffective assistance of counsel because the result of the trial would not have been altered[2].

In summary, we recommend that the petition for writ of habeas corpus be dismissed and the relief requested be denied, as there is no merit to the grounds advanced by the petitioner.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of

---

[1] Even if Mr. Williamson had given no statement after being arrested and not testified at trial, the physical evidence at the scene, including his spontaneous statement to Detective Lydon that "I didn't mean to hurt her", was adequate to support his conviction. (Tr. 378).

[2] While we have addressed the merits of these claims regarding counsel, we also find that none of these claims are "substantial" within the meaning of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). As a result, the claims could also be dismissed on that basis.

appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

    IT IS SO ORDERED this  3   day of November, 2014.

                                                    UNITED STATES MAGISTRATE JUDGE